**AKERMAN LLP**
Caroline H. Mankey (State Bar No. 187302)
*caroline.mankey@akerman.com*
Alicia Y. Hou (State Bar No. 254157)
*alicia.hou@akerman.com*
Jonathan M. Turner (State Bar No. 320614)
*jonathan.turner@akerman.com*
601 W. Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

*Attorneys for Plaintiff*
Phantom E-Moto Inc.

**AKERMAN LLP**
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PHANTOM E-MOTO INC.,

Plaintiff,

v.

WINDHORSE TECHNOLOGIES INC., et al.,

Defendants.

CASE NO. 8:23–cv–01356 JWH (ADSx)

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND SEIZURE ORDER**

[Filed Concurrently with *Ex Parte* Application; Declaration of Jonathan M. Turner; Declaration of Zhuang Li; [PROPOSED] Order]

Complaint Filed: July 27, 2023

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................6

II. STATEMENT OF FACTS ......................................................................6

III. LEGAL ARGUMENT ............................................................................9

a. Phantom Is Entitled to a Temporary Restraining Order and Preliminary Injunction ....................................................................................9

i. Phantom Is Likely to Prevail on its Claims of Trademark Infringement under the Lanham Act ..........................................................10

1. Phantom Has a Valid Protectible Trademark..............................11

2. Defendants' Use of the Marks is Likely to Cause Confusion among Consumers ....................................................................11

ii. Injury to Phantom Is Irreparable and Justifies Injunctive Relief ...............15

iii. The Balance of the Hardships Justifies Injunctive Relief ..........................16

b. Phantom Is Entitled to Seizure of the Infringing Products and All Records Documenting their Manufacture, Sale or Receipt.............................................17

i. Seizure Is Authorized under the Lanham Act............................................17

ii. Phantom Has Satisfied All Statutory Requirements for Seizure ...............18

IV. CONCLUSION........................................................................................21

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

2 Case No. 8:23–cv–01356 JWH (ADSx)

MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND SEIZURE ORDER

72012887;2

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) .......... 7, 10

*Applied Info. Scis. Corp. v. eBAY, Inc.*,
511 F.3d 966 (9th Cir. 2007) .......... 6

*Blockbuster Videos, Inc. v. City of Tempe*,
141 F.3d 1295 (9th Cir. 1998) .......... 12

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
174 F.3d 1036 (9th Cir. 1999) .......... 5, 6, 8, 9

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175 (9th Cir. 1988) .......... 5, 7, 12

*El Pollo Loco, Inc. v. Hashim*,
316 F.3d 1032 (9th Cir. 2003) .......... 5, 10, 14

*Electropix v. Liberty Livewire Corp.*,
178 F. Supp. 2d 1125 (C.D. Cal. 2001) .......... 9

*Entrepreneur Media, Inc. v. Smith*,
279 F.3d 1135 (9th Cir. 2002) .......... 7

*Faizi v. Temori*,
No. 22-CV-04224-VKD, 2022 WL 7094259 (N.D. Cal. Oct. 12, 2022) .......... 9

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
826 F.2d 837 (9th Cir. 1987) .......... 7

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000) .......... 8, 10

*Grey v. Campbell Soup Co.*,
650 F. Supp. 1166 (C.D. Cal. 1986), *aff'd*, 830 F.2d 197 (9th Cir. 1987) .......... 9

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*,
938 F. Supp. 612 (C.D. Cal. 1996) ........ 8

*In re Lorillard Tobacco Co.*,
370 F.3d 982 (9th Cir. 2004) ........ 12

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993) ........ 5, 10, 15

*JouJou Designs, Inc. v. JOJO Ligne Internationale, Inc.*,
821 F. Supp. 1347 (N.D. Cal. 1992) ........ 9

*Lindy Pen Co. v. Bic Pen Corp.*,
725 F.2d 1240 (9th Cir. 1984) ........ 7

*Metro Pub., Ltd v. San Jose Mercury News*,
987 F.2d 637 (9th Cir. 1993) ........ 10

*Paisa, Inc. v. N & G Auto, Inc.*,
928 F. Supp. 1009 (C.D. Cal. 1996) ........ 12

*Partners for Health & Home, L.P. v. Seung Wee Yang*,
No. CV0907849CBMRZX, 2010 WL 11549564 (C.D. Cal. Sept. 13, 2010) ........ 8

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*,
970 F.2d 552 (9th Cir. 1992) ........ 12

*S & B Filters Inc. v. R2C Performance Prod., LLC*,
No. EDCV161069JFWMRWX, 2016 WL 8928314 (C.D. Cal. Aug. 18, 2016) ........ 8

*United States v. Shayota*,
186 F. Supp. 3d 1052 (N.D. Cal. 2016) ........ 12

**Statutes**

15 U.S.C.A. § 1116 ........ 10, 12, 13, 14

15 U.S.C.A. § 1116(d) ........ 12

15 U.S.C.A. § 1116(d)(4) ........ 16

15 U.S.C.A. § 1116(d)(4)(B) ........ 13

15 U.S.C.A. § 1125(a)(1)(A) ........ 6

15 U.S.C.A. § 1114 ........ 6

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**Rules**

L.R. 7-19.2 .......... 16

5 Case No. 8:23–cv–01356 JWH (ADSx)
MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND SEIZURE ORDER
72012887;2

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## I. INTRODUCTION

Plaintiff Phantom E-Moto Inc. ("Plaintiff" or "Phantom"), by and through its undersigned counsel, hereby brings this *Ex Parte* Application for Temporary Restraining Order, Preliminary Injunction, and Seizure Order against Defendants Windhorse Technologies Inc. ("Windhorse") and Alex Yiming Zhao ("Mr. Zhao") (collectively, "Defendants"). This action arises from Defendants' knowing, willful and intentional scheme to trade on Phantom's trademarks and goodwill by engaging in the unlawful sale of goods bearing marks identical to one registered and two unregistered trademarks that Phantom began using in commerce long before Defendants' infringing use. Phantom has demanded that Defendants cease and desist their willful and intentional infringement, to no avail. Instead, in complete disregard of the laws of this nation and Phantom's intellectual property rights, Defendants remain entirely uninhibited in their brazen and exploitative sale of counterfeit inventory bearing Phantom's trademarks. Accordingly, Phantom is left with no alternative but to turn to the Court to protect its rights and business from further damage resulting from Defendants' egregious and infringing conduct.

## II. STATEMENT OF FACTS

Phantom is the owner of the U.S. registered trademark PHANTOMGOGO, Reg. No. 6785032, used in commerce in connection with the marketing and sale of its self-balancing electric scooters since at least March 30, 2021. [Declaration of Zhuang Li ("Li Decl."), ¶ 2, Exh. 1]. In addition to its registered mark, Phantom owns valid and subsisting common law rights to the trademarks PHANTOMGOGO COMMUTER R1 and R1 (collectively with PHANTOMGOGO, the "Marks").

Windhorse is a broker and liaison for an electronic scooter manufacturer based in Shenzen Province, China. On or about September 7, 2022, through trading company Matsunichi Digital USA Inc., Phantom contracted with Defendants to develop 11,520 units of Phantom branded self-balancing e-scooters ("Phantom E-Scooters"). [Li Decl., ¶ 5, Exh. 2]. Following receipt of the Phantom E-Scooters purchased on September 7, 2022,

Phantom ceased doing business with Defendants and has not ordered or authorized any further development of the Phantom E-Scooters. [Li Decl., ¶ 6].

In or about April 2023, Phantom learned that Defendants were using one or more of Phantom's Marks in connection with Defendants' sale and offer for sale of infringing e-scooters unlawfully branded with Phantom's Marks ("Infringing E-Scooters"). [Li Decl., ¶ 7]. On or about April 13, 2023, Phantom, by and through its previous counsel, sent Defendants a cease-and-desist letter demanding that Defendants cease and desist from engaging in further sale of the Infringing E-Scooters and that Defendants destroy any infringing materials in their possession or control. [Li Decl., ¶ 7, Exh. 3]. Following their receipt of the cease-and-desist letter, Defendants provided assurances that they would end the infringing conduct and cease any further sale of the Infringing E-Scooters; however, notwithstanding these assurances, on or about July 19, 2023, Phantom was informed by and through a business associate that at least two shipping containers of Infringing E-Scooters were delivered and being held at a public warehouse located at 2631 Lindsay Privado Dr., Ontario, California 91761 (the "Ontario Warehouse"). [Li Decl., ¶ 8]. Phantom does not currently store and has never stored any of its inventory at the Ontario Warehouse. [Li Decl., ¶ 9].

One of the shipping containers containing the Infringing E-Scooters arrived at the Ontario Warehouse on July 18, 2023, and the second shipping container containing Infringing E-Scooters arrived on July 19, 2023. [Li Decl., ¶ 9]. Each container appeared at the time to contain at least 340 units, totaling at least 680 Infringing E-Scooters. [Li Decl., ¶ 9, Exh. 4]. The cost of each Phantom E-Scooter is approximately $180, though retail value is approximately $450 each. [*Id.*].

The shipping containers identified at the Ontario Warehouse were affixed with a "FBA [Fulfillment by Amazon] Packing List" noting that the "picker" was an individual named Cardi Liang ("Ms. Liang"). [Li Decl., ¶ 10, Exh. 5]. Ms. Liang acts as a warehouse manager at the Ontario Warehouse, and Ms. Liang represented to various individuals

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

within the warehouse that the individual who ordered the shipment of the Infringing E-Scooters located in the Ontario Warehouse was Defendant Mr. Zhao. [Li Decl., ¶ 11]. Mr. Zhao is admittedly a principal and/or agent of Defendant Windhorse. [Li Decl., ¶ 5]. Ms. Liang also represented that the shipments of Infringing E-Scooters were sent to Amazon's fulfillment center by Mr. Zhao. [Li Decl., ¶ 11].

Additional shipping containers containing Infringing E-Scooters arrived at the Ontario Warehouse between July 24, 2023 and July 25, 2023, and are continuing to arrive. [Li Decl., ¶ 12]. Phantom has also been informed that additional shipping containers containing Infringing E-Scooters are being shipped or may have already been shipped to a warehouse located at 14430 Monte Vista Ave., Chino, California 91710 (the "Chino Warehouse"). [*Id*.].

On July 30, 2023, Phantom's representative was able to access the Ontario Warehouse and counted approximately 96 pallets (14 units per pallet) of Infringing E-Scooters. [Li Decl., ¶ 13, Exh. 6]. Each of the shipping containers identified were affixed with a "FBA [Fulfillment by Amazon] Packing List".

Defendants have been engaged in the sale of Infringing E-Scooters since at least March 2023 through various e-commerce sites, including www.amazon.com, and also through in person sales, as Phantom has been informed by a mutual business associate that Mr. Zhao meets with third parties in person either at the Ontario warehouse or at his principal place of business located at 212 Technology Dr., Suite X, Irvine, California 92618 (the "Windhorse Property") to sell the Infringing E-Scooters. [Li Decl., ¶¶ 14-15].

Defendants do not have, nor have they ever had, the right or authority to use Phantom's Marks, and Defendants have entirely flouted Phantom's demands to refrain from engaging in further unlawful sale of the Infringing E-Scooters, despite their promises to cease. [Li Decl., ¶ 16]. Defendants' unauthorized use of the Marks prevents Phantom from exercising any control over the quality of the Infringing E-Scooters bearing Phantom's Marks. [Li Decl., ¶ 17]. Given Defendants' use of marks identical to Phantom's Marks on similar goods, customers are likely to see Defendants' inferior

8 Case No. 8:23–cv–01356 JWH (ADSx)
MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND SEIZURE ORDER
72012887;2

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Infringing E-Scooters and be confused about the identity of the manufacturer. [*Id*.]. Additionally, any defects or deficiencies in Defendants' Infringing E-Scooters will be imputed to Phantom, given that the scooters bear Phantom's Marks. [*Id*.]. Since these e-scooters are capable of traveling on public highways and roads, defects in Defendants' Infringing E-Scooters could result in injuries or even deaths which are also likely to be imputed to Phantom. [*Id*.]. Moreover, Defendants' continued sale of the Infringing E-Scooters continues to damage Phantom's existing business relationships with retailers such as Costco Wholesale, and Amazon, which currently sell Phantom E-Scooters. [Li Decl., ¶ 18]. By flooding the market with infringing product and devaluing the Phantom brand, Defendants' conduct has and continues to damage the goodwill held by these retailers and the esteem with which Phantom's products have come to be regarded. [*Id*.]. The threat of irreparable injury to Phantom is real and immediate.

Lastly, Phantom has used the Marks exclusively in commerce since at least 2020, long before Defendants' conduct as alleged in the Complaint and herein. [Li Decl., ¶ 20]. Indeed, Defendants previously served as a broker who liaised on Phantom's behalf with the Chinese manufacturer of its PHANTOMGOGO line of products and Defendants were well aware that Phantom was the lawful owner of the Marks. [*Id*.]. Despite Defendants' irrefutable knowledge of Phantom's prior and superior trademark rights, Defendants continue to engage in the sale and offer for sale of the Infringing E-Scooters, necessitating the instant litigation and this *Ex Parte* Application. [Li Decl., ¶ 21]. Defendants must be restrained from allowing their Infringing E-Scooters to continue to enter the stream of commerce and to further damage Phantom.

## III. LEGAL ARGUMENT

### a. Phantom Is Entitled to a Temporary Restraining Order and Preliminary Injunction

Injunctive relief is the "remedy of choice" for trademark infringement cases because there is no adequate remedy at law for a defendant's continuing infringement. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). To

obtain a temporary restraining order or preliminary injunction, the moving party may show either "(1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999) (citations omitted); *see also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). The primary focus of the analysis is on the probability of success on the merits, as irreparable injury is presumed upon showing a likelihood of success on the merits of a trademark infringement claim. *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003) ("In a trademark infringement claim, 'irreparable injury may be presumed from a showing of likelihood of success on the merits'"); *see also International Jensen, Inc. v. Metrosounds U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) ("once the plaintiff establishes a likelihood of confusion between the plaintiff's mark and the defendant's, it is ordinarily presumed the plaintiff will suffer irreparable harm if injunctive relief is not granted").

Here, Phantom has presented a compelling case on the merits for its claims and has demonstrated a threat of harm that is, as a matter of law, irreparable. Furthermore, any balancing of the hardships would clearly favor protection of Phantom's unique and valuable intellectual property rights over Defendants' use of an exact copy of Phantom's Marks on goods similar to Phantom's and in the same marketing channels.

**i. <u>Phantom Is Likely to Prevail on its Claims of Trademark Infringement under the Lanham Act</u>**

Section 32 of the Lanham Act, 15 U.S.C.A. § 1114, prohibits the use "without the consent of the registrant" of any reproduction of a registered mark in connection with the sale of goods or services that "is likely to cause confusion, or to cause mistake, or to deceive." Section 43 makes it unlawful for any person to use in commerce "any word, term, name, symbol, or device, or combination thereof, or any false designation of origin, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the origin,

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

sponsorship or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C.A. § 1125(a)(1)(A). Thus, to prove its infringement claims, Phantom must establish that (1) it has a valid, protectable trademark, and (2) that [Defendants'] use of the mark is likely to cause confusion." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

As set forth below, the Defendants are continuing to use Phantom's valid protectable Marks without authorization, and Defendants' use of the Marks is likely to cause confusion among customers.

***1. Phantom Has a Valid Protectible Trademark***

"[R]egistration of the mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [Plaintiff's] exclusive right to use the mark on the goods and services specified in the registration." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999); *see also Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007). Here, Phantom has presented evidence that Phantom is the owner of the trademark PHANTOMGOGO that is registered on the Principal Register (U.S. Reg. No. 6785032), and the unregistered PHANTOMGOGO COMMUTER R1 and R1 Marks that are used in connection with Phantom's marketing and sale of its self-balancing electric scooters. [Li Decl., ¶ 2]. Phantom has used the Marks in commerce for self-balancing electric scooters since at least 2020, long before Defendants began using identical marks on similar goods in or about March 2023. [Li Decl., ¶ 20].

***2. Defendants' Use of the Marks is Likely to Cause Confusion among Consumers***

The "crucial issue" in trademark infringement cases is whether use of the owners' mark creates a likelihood of confusion among the public. *See Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988). It is well settled that a likelihood of confusion "exists when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

service identified by a similar mark." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987); *see also Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1243 (9th Cir. 1984). Importantly, it is not necessary to establish that "actual" consumer confusion has occurred – a "likelihood" that an "appreciable number" of consumers will be confused meets the standard. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002).

In this case, an analysis of the factors outlined in *AMF Inc. v. Sleekcraft Boats* weighs heavily in favor of a finding of likelihood of confusion resulting from Defendants' sale of the Infringing E-Scooters. In *Sleekcraft*, The Ninth Circuit has identified eight factors that are relevant in determining whether a likelihood of confusion exists in a trademark infringement action: (1) the strength of the mark; (2) the relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979).

With respect to the first factor, Phantom's Marks are extremely strong marks, due to their inherent distinctiveness, length of use, and their widespread recognition by consumers. [Li Decl., ¶¶ 2-3]; *see also Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV0907849CBMRZX, 2010 WL 11549564, at *5 (C.D. Cal. Sept. 13, 2010) ("registered trademarks are presumed to be distinctive and should be afforded the utmost protection"); *see also S & B Filters Inc. v. R2C Performance Prod., LLC*, No. EDCV161069JFWMRWX, 2016 WL 8928314, at *7 (C.D. Cal. Aug. 18, 2016) (accord).

With respect to the second factor, both companies are engaged in the marketing and sale of self-balancing electric scooters. [Li Decl., ¶¶ 2-7]. As the Ninth Circuit emphasized in *Brookfield*, where two companies compete directly, there is a greater likelihood that the use of similar marks will cause consumer confusion. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). Here, not

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

only is Defendant using marks that are identical to Phantom's, Defendants are using those identical marks in connection with products and services that are identical to Phantom's. [Li Decl., ¶¶ 7-9; ¶¶ 17-21].

With respect to the third factor, the marks at issue in the instant case are identical. [Li Decl., ¶¶ 17-21]. When the products offered under the marks are nearly identical, as here, an even lesser degree of similarity is required to support a finding of infringement. *See Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*, 938 F. Supp. 612, 614 (C.D. Cal. 1996) (likelihood of confusion was not disputed where the defendant was operating under marks that were identical).

With respect to the fourth factor, though actual confusion is not a required element of a trademark infringement claim, "[e]vidence that the use of the two marks has already led to confusion is persuasive proof that future confusion is likely ..." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000). Here, Phantom has already been contacted by purchasers of Defendants' Infringing E-Scooters who indicated that they were unaware that Defendants' products were not authentic Phantom E-Scooters. [Li Decl., ¶ 15].

With respect to the fifth factor, the likelihood of confusion increases when convergent marketing channels are used by the parties. *See Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1175 (C.D. Cal. 1986), *aff'd*, 830 F.2d 197 (9th Cir. 1987). Here, the evidence demonstrates that Defendants are offering their infringing products for sale on the same platforms that Phantom sells its products on. Specifically, Defendants have been selling the Infringing E-Scooters through e-commerce sites, including www.amazon.com. [Li Decl., ¶¶ 10-11; ¶¶ 13-14]. Where, as here, the infringing products are offered for sale through similar retailers, likelihood of confusion increases. *See Grey*, 650 F. Supp. At 1175 ("likelihood of confusion increased" when products "are sold to the same or overlapping groups of consumers through many of the same department stores"); *see also JouJou Designs, Inc. v. JOJO Ligne Internationale, Inc.*, 821 F. Supp.

1347, 1355 (N.D. Cal. 1992) ("A likely consequence of this convergence in marketing channels used is the increased possibility of confusion.").

With respect to the sixth factor, purchasers of the Infringing E-Scooters will likely exercise less care when making purchases, which suggests a greater likelihood of confusion. *See Faizi v. Temori*, No. 22-CV-04224-VKD, 2022 WL 7094259, at *5 (N.D. Cal. Oct. 12, 2022) (buyers of consumer goods likely exercise less care when purchasing such items); *see also Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1134 (C.D. Cal. 2001) ("It is irrational to expect that even the most sophisticated consumer will exercise the kind of scrupulous examination that would enable him or her to discern the difference between 'Livewire' and 'Live Wire'"); *see also Brookfield Communs.*, 174 F.3d at 1057 (9th Cir. Cal. 1999) ("In the Internet context, in particular, entering a web site takes little effort—usually one click from a linked site or a search engine's list").

With respect to the seventh factor, Defendants intentionally adopted identical marks to Phantom's Marks. Indeed, Defendants previously served as a broker who liaised on Phantom's behalf with the Chinese manufacturer of Phantom's PHANTOMGOGO line of products and Defendants were well aware that Phantom was the lawful owner of the Marks. [Li Decl., ¶ 20].

With respect to the eighth factor, Phantom and Defendants' goods compete directly in the same e-commerce stores, such as www.amazon.com. The "likelihood of expansion" factor considers the possibility that either party will expand their business to compete with the other's business (*see Sleekcraft*, 599 F.2d at 354) – here, that has already occurred. Here, it is indisputable that the Parties to this action already sell directly competitive products. Here, Defendants have numerous listings of the infringing product for sale on Amazon's marketplace. [Li Decl., ¶ 14]. In addition, the Parties sell their products in the same geographic regions. [*Id*.]. As such, this factor also strongly favors a finding of likely consumer confusion.

///

///

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**ii. Injury to Phantom Is Irreparable and Justifies Injunctive Relief**

Injunctive relief is expressly authorized for trademark infringement. *See* 15 U.S.C.A. § 1116 (Court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title"). Moreover, "[o]nce the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000); *see also Metro Pub., Ltd v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993); *see also El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003) ("In a trademark infringement claim, 'irreparable injury may be presumed from a showing of likelihood of success on the merits'"); *see also International Jensen, Inc. v. Metrosounds U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993).

Here, a more than sufficient showing of irreparable harm has been made in this case. Notwithstanding Phantom's superior trademark rights, Defendants continue to offer their Infringing E-Scooters for sale. [Li Decl., ¶¶ 12-13; ¶¶ 15-18]. Phantom has identified numerous listings for Infringing E-Scooters on various e-commerce sites, including www.amazon.com, the vast majority of which remain active as of this filing. [*Id*.]. Defendants do not have, nor have they ever had, the right or authority to use Phantom's Marks, and Defendants have entirely ignored Phantom's demands to refrain from engaging in further unlawful sale of the Infringing E-Scooters. [Li Decl., ¶ 14]. Importantly, Phantom is unable to exercise control over the quality of the Infringing E-Scooters bearing Plaintiff's Marks. [Li Decl., ¶ 17]. As a result of Defendants' continued sale of the Infringing E-Scooters, customers are likely to see Defendants' inferior Infringing E-Scooters and be confused about the source of the goods, and any defects or deficiencies in Defendants' Infringing E-Scooters will be imputed to Phantom, given that the scooters bear marks identical to Phantom's Marks. [*Id*.]. Additionally, since e-

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

scooters are capable of traveling on public roads and highways, defects in Defendants' Infringing E-Scooters could result in injuries or even deaths, which are also likely to be imputed to Phantom. [*Id.*].

**iii. <u>The Balance of the Hardships Justifies Injunctive Relief</u>**

The balance of hardships favors protection of Phantom's unique and valuable trademark rights. In the absence of an injunction, the strength and brand identity of Phantom will be eroded while the Parties await trial. By contrast, any "harm" to Defendants resulting from an injunction on the distribution and sale of the Infringing E-Scooters is self-inflicted. Defendants knew that they were selling counterfeit goods and were risking an infringement claim by doing so. Equity should not reward Defendants for such egregious conduct.

Furthermore, Defendants' distribution and sale of the Infringing E-Scooters causes harm not only to Phantom but also to the marketplace in general and, more specifically, to the consumers who are misled into buying what they mistakenly believe are Phantom's genuine Phantom branded self-balancing e-scooters, but instead are bringing home inferior knockoff products. This harm merits immediate injunctive relief. *See Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d 1295, 1299 (9th Cir. 1998) ("the purpose of the Lanham Act [is] to protect the goodwill created by using a uniform mark and to protect the ability of consumers to distinguish among competing producers"); *see also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988) (injunctive relief is the "remedy of choice" for trademark infringement cases because there is no adequate remedy at law for a defendant's continuing infringement); *see also Paisa, Inc. v. N & G Auto, Inc.*, 928 F. Supp. 1009, 1013 (C.D. Cal. 1996) ("the strong public interest in preventing consumer confusion and fraud favors issuance of the requested injunctive relief.").

///

///

///

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**b. Phantom Is Entitled to Seizure of the Infringing Products and All Records Documenting their Manufacture, Sale or Receipt**

**i. Seizure Is Authorized under the Lanham Act**

The Lanham Act expressly permits a court to issue an order, *ex parte*, for seizure in "[c]ivil actions arising out of [the] use of counterfeit marks," including "records documenting the manufacture, sale or receipt" of the counterfeit goods. 15 U.S.C.A. § 1116(d); *see also Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 558 (9th Cir. 1992) (holding that lower court properly granted *ex parte* seizure order under Section 1116, which "explicitly authoriz[es] the prejudgment seizure of counterfeit goods" and related documentary evidence); *see also United States v. Shayota*, 186 F. Supp. 3d 1052, 1056 (N.D. Cal. 2016) ("congress authorized the issuance of civil seizure orders under 15 U.S.C. § 1116(d) to permit trademark plaintiffs 'to preserve the evidence necessary to bring trademark counterfeiters to justice'"); *see also In re Lorillard Tobacco Co.*, 370 F.3d 982, 987 (9th Cir. 2004) ("The ex parte seizure order is intended to thwart th[e] bad faith tactic of destroy[ing] or transfer[ring] counterfeit merchandise when a day in court is on the horizon.").

Here, Phantom cannot effectively trace the sale or distribution of all of the Infringing E-Scooters without obtaining computer files and other business records documenting the role of Defendants and perhaps others in the chain of distribution. Further, removing the Infringing E-Scooters from the stream of commerce is necessary to protect the public from being confused as to the source of the inferior goods. Defendants have already provided false assurances that they would end the infringing conduct only to continue offering the Infringing E-Scooters for sale, yet Phantom has been made aware of numerous deliveries of infringing product to the Ontario and Chino Warehouses and numerous listings for Infringing E-Scooters on various e-commerce sites, including www.amazon.com. [Li Decl., ¶¶ 8-15]. In light of the foregoing, Defendants clearly have buyers for the Infringing E-Scooters and Defendants could

dispose of the products by way of sale with relative ease. Accordingly, there remains considerable risk that Defendants will move, conceal, destroy, hide, or otherwise dispose of products, evidence, and records relating to the Infringing E-Scooters if Phantom were to seek ordinary discovery from Defendants. The only mechanism to prevent such a violation of Phantom's rights and to protect the public interest is an *ex parte* seizure under the Lanham Act.

**ii. <u>Phantom Has Satisfied All Statutory Requirements for Seizure</u>**

A plaintiff must satisfy seven statutory criteria before the court can grant an *ex parte* order of seizure under Section 1116. *See* 15 U.S.C.A. § 1116(d)(4)(B). Under Section 1116, the Court shall not grant such an application for seizure unless the Court finds as follows:

> (i) an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title; (ii) the applicant has not publicized the requested seizure; (iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services; (iv) an immediate and irreparable injury will occur if such seizure is not ordered; (v) the matter to be seized will be located at the place identified in the application; (vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and (vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

15 U.S.C.A. § 1116.

With respect to the first factor, Defendants have already provided false assurances that they would end the infringing conduct only to continue offering the Infringing E-Scooters for sale. [Li Decl., ¶¶ 8-9]. Phantom has been made aware of numerous deliveries of infringing product to the warehouses located at 2631 Lindsay Privado Dr.,

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Ontario, California 91761 and 14430 Monte Vista Ave., Chino, California 91710. [Li Decl., ¶¶ 9-13]. Defendants have never had the right or authority to use Phantom's Marks, and Defendants have entirely ignored Phantom's demands to refrain from engaging in further unlawful sale of the Infringing E-Scooters. [Li Decl., ¶ 16]. Defendants' conduct to date demonstrates their clear disregard for the lawful trademark rights of Phantom and reveals that Defendants will continue their infringement unless and until the Infringing E-Scooters are seized from Defendants' possession and Defendants' further importation and sale of such goods is enjoined.

With respect to the second factor, Phantom has not publicized the requested seizure. [Li Decl., ¶ 23].

With respect to the third factor, Phantom has clearly demonstrated that it is likely to succeed in showing that Defendants used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services. The marks used on the Infringing E-Scooters are identical to Phantom Marks and they are being used on knockoffs of Phantom's self-balancing electric scooters. Defendants do not have, nor have they ever had, the right or authority to use Phantom's Marks, and Defendants have entirely ignored Phantom's demands to refrain from engaging in further unlawful sale of the Infringing E-Scooters. [Li Decl., ¶ 16].

With respect to the fourth factor, where claims arise from trademark infringement, "irreparable injury may be presumed from a showing of likelihood of success on the merits," which Phantom has already demonstrated. *See El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003); *see also International Jensen, Inc. v. Metrosounds U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) ("once the plaintiff establishes a likelihood of confusion between the plaintiff's mark and the defendant's, it is ordinarily presumed the plaintiff will suffer irreparable harm if injunctive relief is not granted."). Additionally, Phantom remains unable to exercise control over the quality of the Infringing E-Scooters bearing Plaintiff's Marks and allowing the scooters to remain in Defendants' custody creates a strong likelihood that the scooters will still enter into commerce. Any defects or

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

deficiencies in Defendants' Infringing E-Scooters will be imputed to Phantom, given that the scooters bear Phantom's Marks. [Li Decl., ¶ 17]. Additionally, since these e-scooters are capable of traveling on public highways and roads, defects in Defendants' Infringing E-Scooters could result in injuries or even deaths which are also likely to be imputed to Phantom. [*Id*.]. By flooding the market with infringing product and devaluing the Phantom brand, Defendants' conduct has and continues to damage the goodwill held by these retailers and the esteem with which Phantom's products have come to be regarded. [Li Decl., ¶ 18]. So long as the Infringing E-Scooters remain in Defendants' possession, the threat of irreparable injury to Phantom is real and immediate.

With respect to the fifth factor, if a seizure order is issued and the seizure takes place expeditiously, the materials to be seized will be located at the places identified in this Application – namely, the Ontario Warehouse, the Chino Warehouse, and/or Defendants' principal place of business located at 212 Technology Dr., Suite X, Irvine California.

With respect to the sixth factor, the harm to Phantom that would result from denying the Application outweighs any harm that could inure to any legitimate interest of Defendants. Defendants have no legitimate interest in selling, offering for sale, or otherwise distributing the Infringing E-Scooters and they can therefore suffer no harm if the scooters are seized. Phantom, on the other hand, has a very strong interest in protecting its Marks from being placed and sold on the counterfeit products being marketed for sale by Defendant.

With respect to the seventh factor, as previously discussed, there remains a high likelihood that Defendants would move, conceal, destroy, hide, or otherwise make such matter inaccessible to the Court, if Phantom were to proceed on notice. Defendants have already provided false assurances that they would end the infringing conduct only to continue offering the Infringing E-Scooters for sale, yet Phantom has been made aware of numerous deliveries of infringing product to the Ontario and Chino Warehouses and numerous listings for Infringing E-Scooters on various e-commerce sites, including

www.amazon.com, the vast majority of which remain active as of this filing. [Li Decl., ¶¶ 8-15]. In light of the foregoing, Defendants clearly have buyers for the Infringing E-Scooters and Defendants could dispose of the products by way of sale with relative ease. *Ex parte* seizure is thus needed to prevent Defendants from frustrating Phantom's attempt to protect its Marks. *See also* 130 Cong. Rec. H12076, at 12080 (noting that "many of those who traffic in counterfeits have become skilled at destroying or concealing counterfeit merchandise when a day in court is on the horizon."). In light of the foregoing, the interest of justice requires that this *Ex Parte* Application be heard without notice, as allowed under L.R. 7-19.2 governing waiver of *ex parte* notice and 15 U.S.C.A. § 1116(d)(4). [Turner Decl., ¶ 6; Li Decl., ¶¶ 10-11; ¶¶ 17-19].

## IV. CONCLUSION

Accordingly, in light of the foregoing arguments, Phantom respectfully requests that the Court grant Phantom's *Ex Parte* Application for Temporary Restraining Order, Preliminary Injunction, and Seizure Order, immediately halting Defendants' continuing infringement of Phantom's Marks and seizing the Infringing E-Scooters and related materials.

DATED: August 3, 2023

**AKERMAN LLP**

By: */s/ Jonathan M. Turner*

Caroline H. Mankey
Alicia Y. Hou
Jonathan M. Turner

*Attorneys for Plaintiff*
*Phantom E-Moto Inc.*

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342